JAMES H. RECORD, d/b/a Sonny's Super Service,
Appellant,

*v.*

INSURANCE COMPANY OF NORTH AMERICA, Appellee.

438 S.W.2d 743.

(*Jackson,* April Term, 1968.)

Opinion filed February 26, 1969.

J. W. KIRKPATRICK and MAX D. LUCAS, JR., Memphis, for appellant; KIRKPATRICK & LUCAS, Memphis, of counsel.

JAMES D. SENTER, JR., Humboldt, and NEWTON P. ALLEN, Memphis, for appellee; SENTER & SENTER, Humboldt, and ARMSTRONG, ALLEN, BRADEN, GOODMAN, McBRIDE & PREWITT, Memphis, of counsel.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Appellant, complainant below, has appealed from a decree of the Chancellor dismissing his bill on the Chancellor's determination the bill sought to enforce a champertous agreement.

Appellant was engaged in the trucking business, primarily hauling cotton for hire, under the trade name of Sonny's Super Service.

Previous to October 18, 1964, appellant was insured under a policy issued to him by Selective Insurance Company. On October 12, 1964, Selective mailed a notice of cancellation of the policy to appellant effective as of 12:01 A.M., October 18, 1964.

After receiving the notice of cancellation, appellant contacted the agent of defendant, Insurance Company of North America, and obtained a policy effective as of 12:00, Noon, on October 18, 1964.

On October 18, 1964, at about ten P.M., a load of cotton being hauled by appellant burned. The loss was apparently reported to Hardin-Stiles Agency, agent for both Selective and INA. Selective undertook to adjust the loss of $8,056.58 until it was learned the home office of Selective had given appellant notice of cancellation prior to the loss. Thereupon, Selective stopped payment of its draft for the loss, it being the position of Selective its policy was not in effect at the time of the loss.

Demand was then apparently made upon INA for the loss. INA took the position Selective's policy was also in force at the time of the loss and offered to settle for half the loss sustained. This offer was declined.

Appellant then sued both Selective and INA in the United States District Court for the Western District of Tennessee, Eastern Division, insisting he was insured by one or both of the defendants.

After a pre-trial conference, Selective made a loan receipt agreement with appellant, whereby Selective

loaned Record the amount of the loss on condition he dismiss the suit in Federal Court against it, release all claims under its policy and bring a suit in equity against INA in Memphis for the loss.

Under the agreement, Selective was to bear all costs of the suit and provide Attorneys. Complainant was to repay the loan only to the extent of any recovery from INA.

Pursuant to the agreement, the suit in Federal Court was dismissed and the instant suit filed in the Chancery Court of Shelby County against INA.

The original bill set forth the foregoing facts and in addition alleged the cancellation notice was issued in accordance with the provisions of Selectives policy and Record relied thereon.

By its answer and cross bill in which it impleaded Selective, INA stated the attempted cancellation of Selective's policy was not effective. That Record did not rely thereon; and that INA was not liable since the only policy in effect at the time of the loss was that of Selective.

The cross bill likewise alleged the notice of cancellation of Selective's policy was not effective but was in full force and effect. That Selective was estopped by its actions subsequent to the loss to deny its liability. That Selective had not only the primary but the only coverage of the loss. The prayer of the cross bill was for a decree to the effect Selective was solely liable to Record.

To the cross bill both cross defendants, Record and Selective, filed demurrers. After a hearing on the demurrers, INA was granted leave to amend its answer

and cross bill by alleging Selective was a proper party by virtue of T.C.A. Section 21-620.

The Chancellor took the matter under advisement. Some time thereafter, cross defendants moved the Chancellor to rule on the demurrers. INA then moved to be allowed to amend its cross bill to allege the agreement between Record and Selective was champertous and both cross defendants have come into court with unclean hands because they were pursuing their champertous agreement. The Chancellor permitted the amendment to be made.

Selective and Record filed amended demurrers and a hearing was held thereon at which time the Chancellor, on his own motion, directed the parties to submit briefs on the question of champerty. Briefs were filed and a hearing held on the issue of whether the agreement was champertous. Pursuant to this hearing, the Chancellor, on his own motion, entered a decree dismissing the original bill. A nonsuit was taken as to the cross bill.

Record appealed assigning as error the following:

"The court erred in holding the agreement between James H. Record and Selective Insurance Company was champertous and dismissing the original bill on its own motion without hearing proof."

The Chancellor stated in his final decree the agreement between Record and Selective was champertous: that the "champertous agreement by its nature was calculated to affect the issues involved in Record's claim against INA because Record, as a part of the consideration for that agreement, changed his position previously taken in his Federal Court suit * * *."

Appellant, in his brief, cites at length from a very comprehensive annotation in 13 A.L.R.3d, page 42 et seq., in support of his insistence loan receipt agreements are valid and acceptable practice. On page 49 of the annotation it is said:

"Loan receipt transactions have uniformly been held to constitute valid loans in all cases where the insurer's liability was in any way contingent, thereby fitting into the factual pattern of the Luckenbach case (infra), as where its liability was contingent upon nonliability of a carrier, or limited to a pro rata portion of the loss or to excess insurance, or contingent upon the nonexistence of other insurance."

In the case of *Lancaster Mills v. Merchants' Cotton-Press and Storage Company,* 89 Tenn. 1, 14 S.W. 317 (1890), this Court held a loan receipt transaction was a mere subterfuge for payment.

In the Lancaster Mills case the Court said:

"The substantial meaning of this transaction is that the insurer has paid the amount of its liability under the policy, subject alone to be repaid upon the contingency that the assured shall recover same from the carrier, as being primarily liable. The precaution taken in calling it a loan was doubtless due to a fear that payment might affect the right of the insurer to the benefit of the recovery against the carrier.

"This precaution cannot change the fact that the assured has been paid, and that this payment is to stand unless a liability shall be fixed upon the carrier, in which case the recovery from a carrier is to inure to the benefit of the insurer. The precaution was unnecessary. If the liability of the insurer was sec-

ondary, and it pays the loss, it is substituted to the rights of the assured against the party primarily liable, and may maintain a suit in the name of the assured for its benefit.

"If the carrier or compress company is, as between it and the insurer of the owners, primarily liable, then action in the name of the assured may be maintained for the benefit of the insurer, and the fact of payment will not affect the recovery."

In *Luckenbach v. W. J. McCahan Sugar Ref. Company,* 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522 (1918), Mr. Justice Brandeis commented on loan receipts as follows:

"No good reason appears either for questioning its legality or for denying its effect, * * * 'and observe that' * * it is credible to the ingenuity of business men that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

The two Tennessee cases cited above are probably contrary to the general rule of the majority of our sister states as stated in 13 A.L.R.3d, page 49, as quoted above. Nevertheless, those cases demonstrate the fact loan receipts have been considered by this Court and although denied effect, this Court has stated such loans have no bearing on the outcome of the case.

We agree with the statement of Mr. Justice Brandeis in the normal or customary receipt transaction, being unable to ascertain there is any effect on the rights of the parties involved or the final outcome of the case or finding of ultimate liability, there is no reason for denying the

validity of these transactions. However, this isse is not determinative of this case and is not decided.

■ The sole issue involved on this appeal is whether the agreement between Record and Selective is champertous; and, if so, should the bill have been dismissed.

Champerty is defined by Black's Law Dictionary, Fourth Edition, as follows:

> "A bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject matter sought to be recovered."

The law of champerty at common law, under statutes and at present in this State is discussed at length in *Heaton v. Dennis,* 103 Tenn. 155, 52 S.W. 175 (1899); *Robertson and Hobbs v. Cayard,* 111 Tenn. 356, 77 S.W. 1056 (1903); and *Staub v. Sewanee Coal, Coke and Land Company,* 140 Tenn. 505, 205 S.W. 320 (1917). From reading these cases it is seen that in 1899 the Champerty Statutes of this State were repealed to leave in effect only that portion of the laws which relates to the effect of a conveyance of land adversely held. Those statutes not repealed have no application to the present case.

In *Robertson v. Cayard,* supra, this Court said:

> "We are of the opinion that the statement in *Webb v. Armstrong,* [5 Humph. 381] supra, that before the statute proof of a champertous agreement would constrain a dismissal of the suit was inadvertently made. That case arose after the passage of the statute, which super-added to the common law the penalty of a dismissal of the suit. But at common law, as we have seen

from the authorities, proof of a champertous contract between a client and his solicitor did not destroy the right of the former to prosecute the original cause of action. It only vitiated the illegal contract. Without deciding the question whether the repeal of the statute revived the common law, it is clear that it does not leave and enforce a penalty which existed only by virtue of the statute."

In *Staub v. Sewanee Coal, Coke and Land Company,* supra, the Court said:

"At common law, * * *, a suit will not be dismissed merely because there is a champertous contract with relation to its prosecution between the plaintiff and his attorney, or between the plaintiff and another layman. It is said that such a collateral contract, although it be illegal as between the parties thereto, in nowise affects the obligation of the defendant to the plaintiff.

* * * * * *

"So, under these authorities, it follows that no matter how champertous the contract between Mrs. Staub and the Thomas Coal & Land Company, this suit may nevertheless be prosecuted, since the act of 1899."

Appellee insists there is an exception to the rule set forth in the Staub case, the exception being that if the champertous contract involved in the prosecution of the case affects the obligation of the defendant to the plaintiff the case will be dismissed. We do not agree. In *Walsh v. Rose,* 29 Tenn.App. 78, 193 S.W.2d 118 (1945), certiorari denied by Supreme Court 1946, the Court, citing the Staub case, stated flatly:

"It is the rule in this state that a suit will not be dismissed for champerty because complainants and an attorney or layman entered into a champertous contract relating to its prosecution."

We are of the opinion the Chancellor was in error in dismissing the bill on the ground the agreement between Record and Selective was champertous. If the bill should be dismissed it must be on some other ground.

■ The final amendment of defendant to its cross bill alleged Record and Selective have come into court with unclean hands and should be denied the relief they sought. We disagree.

It is our opinion defendant has not been prejudiced in any manner by the action of those parties in entering into the agreement or their actions pursuant to the agreement.

Record has not been guilty of any unconscious, inequitable or immoral conduct which would warrant a denial of relief under the equitable maxim.

The agreement has not changed the facts. The agreement merely states the facts and alleges, "there is a valid dispute as to whether INA or Selective or both had the coverage at the time of the loss * * *."

The allegations in the pleadings of the parties clearly establish an issue as to whether Record relied on the notice of cancellation on the part of Selective as well as whether the notice was effective to cancel the policy. The agreement cannot change the facts. Whether one or both of the policies were in effect at the time of the loss is a question of fact.

The assignment of error is sustained and the decree of the Chancellor is reversed and the case is remanded for further proceedings consistent with this opinion. Defendant will pay the costs of the appeal.

BURNETT, CHIEF JUSTICE, and DYER, CRESON and HUMPHREYS, JUSTICES, concur.